IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)

| | |
|---|---|
| OPEN TEXT, S.A.,<br><br>                    Plaintiff<br><br>v.<br><br>BOX, INC. and CARAHSOFT<br>TECHNOLOGY CORPORATION,<br><br>                    Defendants. | Civil Action No. 2:13-cv-00319-MSD-DEM |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
<u>JOINT MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, TO SEVER
AND STAY THE CLAIMS AGAINST CARAHSOFT TECHNOLOGY CORPORATION</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I .    PRELIMINARY STATEMENT ................................................................... 1

II .   FACTUAL BACKGROUND ....................................................................... 3

     A.    The Evidence Regarding The Accused Products Is Located In California ........... 3

     B.    OpenText's Purported Connection To Virginia Appears Highly Attenuated ........ 5

III LEGAL ANALYSIS ..................................................................................... 7

     A.    Legal Standards .................................................................................. 7

          1.    Legal Standard For Transfer Of The Action Under Section 1404(a) ......... 7

          2.    Legal Standard To Sever And Stay The Action Against Carahsoft ............ 8

     B.    The Court Should Transfer The Entire Action Under Section 1404(a) ................ 8

          1.    Plaintiff Could Have Brought This Action In The Northern District Of California ........................................................................................... 8

          2.    The Convenience Of The Parties And Witnesses, And The Interests Of Justice, Compel Transfer To The Northern District Of California........ 9

               a.    Plaintiff's Choice Of Forum Should Be Afforded No Weight ......9

               b.    The Location Of Most Key Witnesses And Evidence Compels Transfer To The Northern District Of California…………………..14

               c.    The Convenience Of The Parties Weighs In Favor Of Transfer...17

               d.    The Interests Of Justice Compel Transfer To The Northern District Of California……………………………………………18

     C.    If It Does Not Transfer The Entire Action, The Court Should Sever and Stay the Claims As To Carahsoft and Transfer The Claims As to Box ........................ 19

IV CONCLUSION ............................................................................................ 21

i

# TABLE OF AUTHORITIES

**Cases**

*Acterna v. Adtech, Inc.*,
129 F. Supp. 2d 936 (E.D. Va. 2001) .............................................................. 13, 15

*Agilent Techs., Inc. v. Micromuse, Inc.*,
316 F. Supp. 2d 322 (E.D. Va. 2004) .............................................................. 8, 13

*Augme Techs., Inc. v. Gannet Co.*,
2011 WL 3207188 (E.D. Va. July 26, 2011) ............................................ 10, 13, 14

*Bd. Of Trustees v. Baylor Heating and Air Conditioning*,
702 F. Supp. 1253 (E.D. Va. 1988) .................................................................. 18

*Brown Mfg. Corp. v. Alpha Lawn & Garden Equip., Inc.*,
219 F. Supp. 2d 705 (E.D. Va. 2002) .............................................................. 19, 20

*Civix-DDI, LLC v. Loopnet, Inc.*,
2012 WL 3776688 (E.D. Va. Aug. 30, 2012) ...................................................... 10

*Cognitronics Imaging Systems, Inc. v. Recognition*,
83 F. Supp. 2d 689 (E.D. Va. 2000) .................................................................. 19

*Corry v. CFM Majestic Inc.*,
16 F. Supp. 2d 660 (E.D. Va. 1998) ................................................................ 14, 20

*Crater Corp. v. Lucent Tech., Inc.*,
255 F.3d 1361 (Fed. Cir. 2001) ....................................................................... 14

*Dana v. 313 Freemason, A Condo. Ass'n*,
587 S.E.2d 548 (Va. 2003) ............................................................................. 12

*GTE Wireless, Inc.*,
71 F. Supp. at 520 ........................................................................................ 16

*In re Genentech, Inc.*,
556 F.3d 1338 (Fed. Cir. 2009) ....................................................................... 15

*Inline Connection Corp. v. Verizon Internet Servs., Inc.*,
402 F. Supp. 2d 695 (E.D. Va. 2005) ................................................................. 7

*Kabat v. Bayer Cropscience LP*,
2008 U.S. Dist. LEXIS 41187 (E.D. Va. May 22, 2008) ........................................ 17

*Koh v. Microtex Intern., Inc.*,
250 F. Supp. 2d 627 (E.D. Va. 2003) ....................................................... passim

*LG Elecs. Inc. v. Advance Creative Computer Corp.*,
131 F. Supp. 2d 804 (E.D. Va 2007) ........................................................ passim

*Lycos, Inc. v. TiVo, Inc.*,
499 F. Supp. 2d 685 (E.D. Va. 2007) ............................................................ 10, 13

i

*NanoEnTek, Inc.*,
  2011 U.S. Dist. LEXIS 138535 .................................................................... 13, 16

*Open Text S.A. v. Alfresco Software, Ltd., et al.*,
  No. 2:13-cv-320 (E.D. Va. 2013) .................................................................. 18

*Pragmatus AV, LLC v. Facebook, Inc.*,
  769 F. Supp. 2d 991 (E.D. Va 2011) .................................................. 10, 11, 19

*Ricoh Co., Ltd. v. Honeywell, Inc.*,
  817 F. Supp. 473 (D. N.J. 1993) ................................................................. 12

*Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*,
  230 F. Supp. 2d 655 (E.D. Pa. 2002) ........................................................ 12

*Schrader Bridgeport Intern., Inc v. Continental Automotive Systems, U.S., Inc.*,
  2012 WL 503602 (W.D. Va. Feb. 15, 2012) ............................................. 11

*Scott v. Branch Banking & Trust Co.*,
  2008 U.S. Dist. LEXIS 109442 (E.D. Va. Sept. 18, 2008)....................... 17

*Telepharmacy Solutions v. Pickpoint Corp.*,
  238 F. Supp. 2d 741 (E.D. Va. 2003) ........................................................ 18

*United States v. Microsemi Corp.*,
  2009 WL 577491 (E.D. Va. Mar. 4, 2009) ............................................... 12

*Winner lnt'l Royalty Corp. v. Wang*,
  202 F.3d 1340 (Fed. Cir. 2000), *cert. denied*, 530 U.S. 1238 (2000)....... 7

*Wolf v. Fauquier Cnty Bd. Of Supervisors*,
  No. 1:06-CV-945 (JGC), 2007 WL 2688418 (E.D. Va. Sept. 12, 2007), *aff'd*, 555 F.3d 311
  (4th Cir. 2009)............................................................................................. 12

## Statutes

28 U.S.C. § 1404(a) ........................................................................................ 9

28 U.S.C. § 1498.................................................................................... 6, 13

28 U.S.C. §§ 1391(c) & 1400(b)................................................................ 8

# I.    PRELIMINARY STATEMENT

Despite having no real ties to the Eastern District of Virginia, Plaintiff is trying to take advantage of this Court's "rocket docket" even though this case really belongs in California. Plaintiff is a Luxembourg patent holding company with no offices, business operations or employees in Virginia.  Plaintiff has asserted claims of patent infringement against a California provider of cloud computing products.  California is plainly the locus of the accused activity: Defendant Box, Inc. makes and designs the accused products and is located in California, and thus all the key witnesses and documents are in California.  By contrast, Plaintiff has no real connection to this forum, and its attempt to create a connection by naming Defendant Carahsoft Technology Corporation ("Carahsoft") fails, as Carahsoft is a mere distributor with only a single Box sale in the State of Virginia for less than $3,000.  In short, the Eastern District of Virginia has no real connection to this case, and this Court should therefore transfer the case to the Northern District of California under 28 U.S.C. Section 1404(a) for at least the following reasons.

First, this case could have been brought in the Northern District of California, where both Defendants would be subject to jurisdiction.

Second, California is clearly the hub of the accused activity.  Box has researched, developed, designed, and marketed the accused products from its headquarters in the Northern District of California.  As a result, all key witnesses with knowledge of the accused products, and all key documentary evidence concerning those products, are located in the Northern District of California.

Third, this action has no real connection to the Eastern District of Virginia.  Plaintiff, patent owner Open Text S.A., is a Luxembourg corporation with no offices or employees in

Virginia.  The Complaint attempts to mask the central fact that Plaintiff has no Virginia nexus by referencing a subsidiary not even of Plaintiff, but of a sister corporation.  Plaintiff alleges that the sister's subsidiary operates in Virginia, but that has nothing to do with this action.  Indeed, the subsidiary is *not* a party (or even a subsidiary of a party), has no standing to be a party and cannot properly be considered for any venue analysis.  The only other alleged connection to this forum is via Carahsoft, one of some 150 Box resellers, with *no* role in the development of the accused products, no relevant witnesses or documents, and only a single Box sale in Virginia – a sale to the United States government that is immune from liability and should be disregarded for this venue analysis in any event.  No inventors, prosecuting attorneys or other third party witnesses reside in Virginia, and thus, setting aside Plaintiff's thinly-veiled pleading tactics, there is simply no connection to this forum.

Fourth, the interests of justice compel transfer.  Because Virginia has no real connection to this action, Plaintiff is presumably trying to take advantage of this Court's "rocket docket," but such forum shopping does not support venue in this district.

Finally, in the event this Court is unwilling to transfer the entire action to California, in the alternative, it should transfer the claims against Box to California and then sever and stay the remaining claims against Carahsoft.  Plaintiff's claims against Carahsoft are peripheral to the main action, and resolution of the main claims against Box will resolve the claims against Carahsoft, as its alleged liability is entirely derivative and dependent upon alleged liability of Box.

In sum, the bulk of the evidence, including documents and witnesses, is located in the Northern District of California.  Accordingly, the convenience of the parties and witnesses and

the interests of justice all favor transfer to the Northern District of California.[1]

## II.     FACTUAL BACKGROUND

Plaintiff filed this action on June 5, 2013, alleging that Defendants infringe twelve patents purportedly owned by Plaintiff.  [*See* Doc. No. 1.]  More specifically, Plaintiff alleges that Box is infringing the patents-in-suit by "making, using, selling, and offering to sell the Personal, Business, and Enterprise versions of [Box's] file-sharing software, systems, and services," and that Carahsoft is infringing the patents by "selling and offering for sale" the same Box software  [*See, e.g., id.*, ¶¶ 57-58.]

## A.     The Evidence Regarding The Accused Products Is Located In California

Box is a startup technology company that provides its users with a secure content sharing platform, allowing them to share content internally and externally.  [Declaration of Grant Shirk ("Shirk Decl."), ¶ 2.]  The concept for Box was originally conceived as a college business project, and Box's co-founders – then college students – launched the company from a California dorm room in 2005.  [*Id.*]  Box independently conceived and developed its core software products and platform, which have helped individuals, small businesses and Fortune 500 companies to access and share their content from anywhere.  [*Id.*] Box continues to develop its products, and recently announced it is considering an initial public offering in 2014.  [*Id.*] This is thus a critical time for Box, requiring its key employees to remain available at headquarters as Box prepares for upcoming events and continues to develop its product offerings.  [*Id.*, ¶¶ 2, 11.]

Box has over 850 employees, the vast majority of whom work at offices located in the San Francisco Bay Area in California.  [*Id.*]  Box has no offices in Virginia, nor any employees,

---

[1]     On the same day it filed the Complaint in this case, Plaintiff also filed in this district a Complaint based on several of the same patents against Carahsoft and a different California-based company, Alfresco Software, Inc.  Defendants in that case are also moving to transfer the action to the Northern District of California.

except for a few sales and marketing representatives who had no involvement in the design or development of the Accused Products.  [*Id.*, ¶ 8.]  Box does not lease or own any property in Virginia.  [*Id.*]  Notably, the data centers and associated servers where Box stores its customer data are also located in the Northern District of California.  [*Id.*, ¶ 9.]

Importantly, all work regarding the research, development, design and testing of the Accused Products occurred in California.  [*Id.*, ¶ 5.]  In addition, the management of, and the vast majority of Box employees responsible for the sales and marketing of, the Accused Products are based in the San Francisco Bay Area.  [*Id.*]

As a result, most documentary evidence regarding the Accused Products is located within the Northern District of California.  For example, all documents relating to the design, development, testing, functionality, and operation of the Accused Products are located in Box's Los Altos headquarters (in the San Francisco Bay Area).  [*Id.*, ¶ 6.]  Likewise, the vast majority of documents relating to marketing and sales concerning the Accused Products, as well as all other financial documents, are located in Box's Los Altos headquarters.  [*Id.*]  None of Box's documents is located in Virginia. [*Id.*]

In addition, the key witnesses regarding the Accused Products all reside in the Northern District of California.  [*Id.*, ¶¶ 7-10.]  For example, Box's technical witnesses who would testify about the research, design, development, testing, functionality, and operation of the Accused Products all reside in Northern California, including Box's Vice President of Technology, Sam Ghods, and his team.  [*Id.*, ¶ 10.]  Similarly, Box's witnesses who would testify about the sales, finances and marketing of the Accused Products, including Grant Shirk and Jennifer Ceran, are located at Box's Los Altos headquarters and reside in or around Los Altos, California.  [*Id.*]   It would be inconvenient and cause significant hardship for these various Box witnesses to be

forced to travel to Virginia for the purposes of this litigation, particularly given that Box is still in startup mode and has announced that it is considering an IPO next year.  [*Id.*, ¶ 11.]

Finally, California is a more convenient forum on balance for third parties as well.  James Campbell, a named inventor of two of the patents-in-suit, resides in Encinitas, California (in the Southern District), and thus California would be a more convenient forum for him.  [Declaration of William R. Overend ("Overend Decl."), ¶ 3.]  The remaining twelve inventors reside in Washington state, Massachusetts, Texas, and Canada, and thus most would require significant travel to either California or Virginia.  [*Id.*, ¶ 2.]  [*Id.*]  Likewise, it appears that the prosecuting attorneys live in Washington, Texas, New York, and Canada, and thus California is no more inconvenient than Virginia, as each forum would require significant travel.  [*Id.*, ¶ 8.]  Notably, none of the named inventors or prosecuting attorneys for the twelve patents-in-suit resides in Virginia.  [*Id.*]

## B.   OpenText's Purported Connection To Virginia Appears Highly Attenuated

Importantly, Plaintiff has no real connection to the Eastern District of Virginia at all. [*See generally* Doc. No. 1.]  Open Text S.A. is a Luxembourg corporation located in Luxembourg.  [*See id.*, ¶ 6.]  Plaintiff has not alleged that it maintains an office in Virginia, that it has any employees in Virginia, or that it conducts business in this district.  [*Id.*]  In fact, it is not registered to do so.  [Overend Decl., ¶ 11.]  Nor does Plaintiff own any property in Virginia. [*Id.*, ¶ 10.]

Instead, Plaintiff has attempted to create the appearance of connections to Virginia through the actions of non-party subsidiaries and related companies (which it collectively refers to as "OpenText"). [*See id.*, ¶¶ 5-22.]  Notably, two of these three related entities are not located in Virginia:  Open Text Corporation is a Canadian corporation, and Open Text, Inc. is located in

Texas.  [*Id.*, ¶¶ 6; Overend Decl., ¶ 9.]  The only company that is located in Virginia is OpenText

Public Sector Services ("OTPSS") – a subsidiary of Open Text, Inc. (not Plaintiff Open Text

S.A.).  [*See id.*, ¶ 8.]  It appears that the only purported connections to Virginia are through

OTPSS and through the Public Sector Sales ("PSS") group of Open Text Corporation (again, a

Canadian corporation that is not a party) located in Maryland.[2]  [*See id.*, ¶¶ 8, 14-22.]

Neither Plaintiff nor any other Open Text entity is likely to have any key witnesses

because those entities did not invent, develop or prosecute the patents.  Instead, Plaintiff acquired

the patents from other entities.  [*See* Doc. No. 1, Exhs. A-L.]  The previous owners of those

patents were not located in Virginia, but were instead in Barbados, Massachusetts, Texas, and

Canada.  [*See id.*; Overend Decl., ¶ 4.]  To the extent Plaintiff claims to know of any key

witnesses (through related Open Text entities or otherwise), those witnesses would attend trial in

any case.

The only other purported connection to this district is through Carahsoft.  Carahsoft is

one of over 150 resellers of Box's Accused Products.  [Shirk Decl., ¶ 11.]  Importantly,

Carahsoft has only made a single Box sale in the State of Virginia, which was less than $3,000.

[Abod Decl. ¶ 9.]  That single sale was made to the federal government, for the benefit of, and

use by, the federal government.[3]  [*Id.*]  Carahsoft's role is limited to reselling the Accused

Products, and it plays *no role* in the research, design or development of the Accused Products.

[*Id.*, ¶ 10; Shirk Decl. ¶ 14.]  Carahsoft also does not provide any technical support or

---

[2]    Although the residence and activities of non-parties are not relevant to a determination of
whether venue is proper, Defendants note that non-party Open Text Corporation also has four
offices in California, two of which are in the Northern District of California.  [Overend Decl., ¶
12.]

[3] Furthermore, this mere singular sale is subject to a claim of government contractor immunity
under 28 U.S.C. § 1498, so it should be disregarded in the transfer analysis.

maintenance services for the Accused Products.  [Abod Decl., ¶ 10.]  Moreover, Box considers

the design of its Accused Products to be Box's trade secrets, and thus does not share such

information or materials with distributors such as Carahsoft.  [Shirk Decl., ¶ 14.]  As such,

Carahsoft's employees possess no knowledge regarding the research, design, development,

operation, functionality, sales, and marketing of the Accused Products, other than high level

knowledge that is cumulative of knowledge in the possession of Box employees.  [Abod Decl. ¶

13; Shirk Decl., ¶ 12.]  Likewise, Carahsoft possesses no documents concerning the research,

design, development, operation, functionality, sales, and marketing of the Accused Products,

with the exception of materials that would be cumulative of Box's documents.  [Abod Decl. ¶ 12;

Shirk Decl., ¶ 12.]

### III     LEGAL ANALYSIS

**A.     Legal Standards**

**1.     Legal Standard For Transfer Of The Action Under Section 1404(a)**

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. S 1404(a).  The decision whether to transfer a civil action is committed to the sound

discretion of the trial court. *Inline Connection Corp. v. Verizon Internet Servs., Inc.*, 402 F. Supp.

2d 695, 699 (E.D. Va. 2005). In a patent infringement action such as this, motions to transfer

pursuant to Section 1404(a) are governed by the law of the regional circuit in which the district

court sits. *Winner lnt'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000), *cert.

denied*, 530 U.S. 1238 (2000) (citations omitted).

To determine whether a transfer of venue is appropriate, district courts in Virginia

consider: (1) whether the claims might have been brought in the transferee forum, and (2)

whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum. *LG Elecs. Inc. v. Advance Creative Computer Corp.,* 131 F. Supp. 2d 804, 809 (E.D. Va 2007). Here, as discussed more fully below, both factors compel transfer.

> **2.      Legal Standard To Sever And Stay The Action Against Carahsoft**

Where transfer is appropriate as to some defendants but not all, "[a] district court is empowered to order severance of defendants, to transfer the action as to some defendants and to issue a stay . . . as to the remainder of the action." *See Koh v. Microtex Intern., Inc.*, 250 F. Supp. 2d 627, 631-32 (E.D. Va. 2003) (citations omitted) (granting motion to transfer and then severing and staying claims against remaining defendants); *accord LG Elecs.*, 131 F. Supp. 2d at 811. As discussed below, if the Court does not transfer the entire action to the Northern District of California, it should at least transfer the claims against Box, and then sever and stay the remaining claims against Carahsoft.

**B.      The Court Should Transfer The Entire Action Under Section 1404(a)**

> **1.      Plaintiff Could Have Brought This Action In The Northern District Of California**

To determine whether the transferee court is a district where the cause of action "might have been brought," the Court must first determine whether Plaintiff's claims could have been brought in the transferee court initially. *Agilent Techs., Inc. v. Micromuse, Inc.*, 316 F. Supp. 2d 322, 325 (E.D. Va. 2004). In a patent infringement case, such claims may be brought where venue is proper – that is, (a) where a defendant "resides" (i.e., is subject to personal jurisdiction) or (b) where the defendant has committed acts of infringement and has a regular and established place of business.  28 U.S.C. §§ 1391(c) & 1400(b); *LG Elecs.,* 131 F. Supp. 2d at 809.

Here, there is no dispute this action could have been brought in the Northern District of

California because personal jurisdiction and venue are both proper there as to both Defendants. *See id.*; 28 U.S.C. S 1404(a).  Specifically, Box has its principal place of business in the Northern District of California and thus is obviously subject to general jurisdiction and venue there.  [Shirk Decl., ¶ 2.]  Carahsoft likewise is subject to specific personal jurisdiction (and thus venue) as to these particular claims in the Northern District of California, because it has sold the Accused Products in the Northern District of California.  [Abod Decl., ¶ 8.]  Additionally, Carahsoft generally does substantial business in California, and it derived millions of dollars in revenues in 2012 alone from sales of products in California.  [*Id.*, ¶ 5-7.]  Consistent with these facts, Carahsoft consents to jurisdiction and venue in the Northern District of California solely for the purposes of this action.  [*Id.*, ¶ 14.]  In short, this action could have been brought in the Northern District of California as to both Defendants, and the threshold inquiry for transfer under Section 1404(a) is satisfied.

**2.      The Convenience Of The Parties And Witnesses, And The Interests Of Justice, Compel Transfer To The Northern District Of California**

Under the second prong of the 1404 (a) analysis, the Court considers: (1) the plaintiff's choice of forum, (2) witness convenience and access, (3), the convenience of the parties, and (4) the interest of justice.  *Koh ,* 250 F. Supp. 2d at 633.  Here, each of these factors weighs in favor of transfer.

**a.      Plaintiff's Choice Of Forum Should Be Afforded No Weight**

Although a plaintiff's choice of forum is ordinarily accorded some weight, this principle does not apply when the plaintiff is not litigating on its home turf and the claims bear little or no relation to the chosen forum. *See Koh,* 250 F. Supp. 2d at 633 ("plaintiff's chosen venue is not given such substantial weight when the plaintiff selects a forum other than its home forum and

the claims bear little or no relation to the chosen forum"); *accord LG Elecs.*, 131 F. Supp. 2d at

814.  Thus, for example, where the plaintiff is a "non-practicing entity" with attenuated

connections to the district, the Court should give little or no weight to the plaintiff's chosen

forum.  *See, e.g.*, *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp.  2d 991, 995 (E.D. Va

2011); *Civix-DDI, LLC v. Loopnet, Inc.*, 2012 WL 3776688, at \*3 (E.D. Va. Aug. 30, 2012).

The plaintiff must prove a *legitimate* connection to the district, and thus transfer is also

appropriate where it appears the plaintiff is engaged in forum shopping.  *See, e.g.*, *Augme Techs.,

Inc. v. Gannet Co.*, 2011 WL 3207188, at \*2 (E.D. Va.  July 26, 2011); *Pragmatus*, 769 F. Supp.

2d at 995.  Each of these considerations counsels against giving any weight to Plaintiff's choice

of forum.

      First, as to Open Text S.A. – the *only* plaintiff in this lawsuit – its home forum is not

Virginia.  Rather, Plaintiff is a Luxembourg corporation located in Luxembourg.  [*See* Doc. No.

1, ¶ 6.]  Nowhere in the Complaint does Plaintiff allege any connection between Open Text S.A.

and Virginia.  [*See generally id.*]  Plaintiff has not alleged that it maintains an office in Virginia,

that it has any employees in Virginia, or that it conducts business in this district.  [*Id.*]  Indeed,

Plaintiff is not registered to do business in Virginia, does not own any property in Virginia, and

appears to have no connection to this district at all.  [Overend Decl., ¶¶ 10-11.]  These facts

weigh *against* Plaintiff's choice of forum. *See Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685,

692-93 (E.D. Va. 2007) (while plaintiff was incorporated under the laws of Virginia, it had no

employees or other physical presence within the Commonwealth, which made its connection

"tenuous" with the forum state); *LG Elecs.*, 131 F. Supp. 2d at 814 (dismissing Plaintiff's

"choice of Virginia as a venue . . . because neither it nor this suit has a substantial relation to

Virginia").

Second, and similarly, Plaintiff is a non-practicing entity with no real connection to Virginia.  In *Pragmatus,* the Court accorded "minimal weight" to the plaintiff's forum choice because it was a non-practicing entity.  *Pragmatus*, 769 F. Supp. 2d at 995.  The *Pragmatus* plaintiff did not research and develop any new technology, but rather simply acquired patents, licensed the technology, and sued alleged infringers.  *Id.*  Although the plaintiff had recently incorporated in Virginia and had a part-time employee in the district, the Court nonetheless found the plaintiff's connection to be tenuous and not entitled to any significant weight.  *Id.*

Here, the facts present an even more compelling case for transfer than in *Pragmatus*.  As in that case, Plaintiff appears to be a non-practicing entity whose connection to Virginia is attenuated at best.  Plaintiff is a foreign company that acquired the patents, moved them out of the country and apparently neither develops nor sells any products, let alone products that competes with Box products.  Put simply, Plaintiff made a business choice to move the patents overseas and now must live with the consequences of its decision.  *Id.*  And whereas the plaintiff in *Pragmatus* was incorporated in Virginia and had a part-time employee there, Plaintiff here does not even purport to have an office, employees, or any business operations whatsoever in this District.  In short, Plaintiff's highly attenuated connection "militates against a plaintiff's chosen forum and weigh[s] in favor of transfer to a venue with more substantial contacts."  *Koh*, 250 F. Supp. 2d at 635; *see also, e.g.*, *Pragmatus*, 769 F. Supp. 2d at 995; *Schrader Bridgeport Intern., Inc v. Continental Automotive Systems, U.S., Inc.*, 2012 WL 503602 (W.D. Va. Feb. 15, 2012) (transfer appropriate where only alleged connection to forum was through plaintiff's "sales agent" located there); *see Microsemi*, 2009 WL 577491, at * 6-7; *Ricoh Co., Ltd.*, 817 F. Supp. at 481.

Although Plaintiff attempts to create the appearance of connections to Virginia by

pleading allegations about other non-party Open Text entities, those allegations do not create a substantial connection between Plaintiff and this district. [*Id.*, ¶¶ 5-22.] Even as to the three non-party OpenText entities, two of them are located outside Virginia (Open Text Corporation is a Canadian corporation, and Open Text, Inc. is located in Texas). [*Id.*, ¶¶ 6; Overend Decl., at ¶ 9.] The only company that is located in Virginia is non-party OpenText Public Sector Services – a subsidiary of non-party, Texas-based Open Text, Inc. (not Plaintiff Open Text S.A.). It is well established, however, that a plaintiff cannot rely on non-party affiliates to create venue, and thus the alleged contacts these other OpenText entities have with Virginia are irrelevant to this dispute.[4] *See e.g.*, *Saint-Gobain Calmar, Inc. v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 659-660 (E.D. Pa. 2002) (rejecting alleged connection to forum based on parent-subsidiary relationship when parent was not a party to the action and had no interest in patents at issue); *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 481 (D. N.J. 1993) (rejecting alleged connection to forum through subsidiary when subsidiary was not a party to the action, had no interest in patent-at-issue, and did not participate in design, development, or manufacture of technology at issue.); *see also United States v. Microsemi Corp.*, 2009 WL 577491, at * 6-7 (E.D. Va. Mar. 4, 2009) (rejecting attempts to create connection to Virginia through acts of related governmental agency that was not a party to action).

Third, to the extent that Plaintiff contends that venue is proper in Virginia based on Defendants' sales of the Accused Products in Virginia, it is well settled that such sales do not constitute a "substantial connection" to the forum, as a defendant manufacturer would "likely

---

[4]     Under Virginia law, a parent and its subsidiaries are distinct legal entities, and courts will not pierce the corporate veil absent compelling circumstances. *See e.g.*, *Wolf v. Fauquier Cnty Bd. Of Supervisors*, No. 1:06-CV-945 (JGC), 2007 WL 2688418, at *7 (E.D. Va. Sept. 12, 2007), *aff'd*, 555 F.3d 311 (4th Cir. 2009) (citing *Dana v. 313 Freemason, A Condo. Ass'n*, 587 S.E.2d 548, 554-555 (Va. 2003)).

have this same contact with every other state in this nation."[5] *Lycos, Inc.*, 499 F. Supp. 2d at

692-93 (because sales were not unique to Virginia, they did not constitute a substantial

connection to the forum state and thus granting motion to transfer); *Agilent Techs., Inc. v.*

*Micromuse, Inc.,* 316 F. Supp. 2d 322, 327 n.3 (E.D. Va. 2004) (same); *NanoEnTek, Inc.*, 2011

U.S. Dist. LEXIS 138535, at *8-10 (same). As this Court recently noted, "[w]hether the

Defendants sold or offered for sale their allegedly infringing products or services in this district

is of little import: Sales activity alone does not establish a substantial connection to the forum."

*Augme Techs., Inc.*, 2011 WL 3207188, at *3 (rejecting allegedly "strong connection" to the

Eastern District of Virginia based merely on defendants' product sales in the forum, and granting

motion to transfer patent infringement case); *accord Koh,* 250 F. Supp. 2d at 635 (transfer

warranted where activity in forum was limited to minimal sales activity by non-party subsidiary);

*Acterna*, 129 F.Supp.2d at 938 ("federal courts are not solicitous of plaintiffs claiming

'substantial rights' for their forum choice where the connection with the forum is limited to sales

activity without more").

   Here, Box's sales of the Accused Products in Virginia were by no means significant or

unique to Virginia. To the contrary, Box's sales of the Accused Products in Virginia accounted

for only about 2 percent of its overall U.S. sales. [Shirk Decl., ¶ 12.] And as to Carahsoft, it

only made a single sale of roughly $3,000 of the Accused Products in Virginia, versus $93,000 in

Box sales in California. [Abod Decl., ¶¶ 8-9.] Moreover, Carahsoft's only sale was to the

federal government and is thus subject to a claim of immunity under 28 U.S.C. § 1498. *See*

---

[5]    Moreover, where, as here, "none of the infringing products were developed or produced
in this District," then "[m]ere sales and marketing activity does not entitle [Plaintiff's] choice of
forum to substantial weight." *NanoEnTek, Inc.*, 2011 U.S. Dist. LEXIS 138535, at *8-10 (finding
that sales activity did not amount to a substantial connection to the forum and granting the
motion to transfer); *LG Elecs.*, 131 F. Supp. 2d at 814 (same); *Lycos, Inc.*, 499 F. Supp. 2d at
692-93.

*Crater Corp. v. Lucent Tech., Inc.*, 255 F.3d 1361, 1364 (Fed. Cir. 2001) ("If a patented invention is used or manufactured for the government by a private party, that private party cannot be held liability for patent infringement").  As such, sales of Defendants' products in Virginia do not create a "substantial connection" with this forum.

Finally, given the lack of any real connection between Plaintiff and Virginia, Plaintiff's choice of forum here suggests that Plaintiff is forum shopping.  This, too, counsels against giving any weight to Plaintiff's choice of forum.  *See, e.g.*, *Augme*, 2011 WL 503602, at *2 (finding no substantial connection to forum state and granting transfer where, among other things, the facts were "somewhat suggestive of forum shopping").

 In sum, because Plaintiff has chosen to litigate in a forum that is not its home turf and that has no substantial connection to Plaintiff or its claims of patent infringement, no weight should be given to its choice of forum.

> **b.**     **The Location Of Most Key Witnesses And Evidence Compels Transfer To The Northern District Of California**

Because the Plaintiff's choice of forum should be afforded no weight, "the more important question is where the majority of the witnesses and evidence is located." *Augme Techs., Inc.*, 2011 WL 3207188, at *3. This is often a "dispositive" factor, as courts frequently transfer venue to the district "featuring most witnesses and evidence." *See In re Nintendo Co.*, 589 F.3d at 1198 (citations omitted); *see also Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 667 (E.D. Va. 1998) (granting transfer and noting that location of witnesses and documents in the transferee forum weighed in favor of transfer); *LG Elecs.*, 131 F. Supp. 2d at 814 (granting transfer and finding that the "majority of officers and employees" that would be witnesses and "the vast majority of any potentially relevant documents regarding allegedly infringing

activities" would be in the transferee forum, which weighed in favor of transfer).  Importantly, in patent cases such as this, the preferred forum is generally the center of the accused activity, since the bulk of relevant evidence comes from the accused infringer.  *See In re Genentech, Inc*., 556 F.3d 1338, 1345-46 (Fed. Cir. 2009); *Acterna v. Adtech, Inc.*, 129 F. Supp. 2d 936, 939 (E.D. Va. 2001).

Here, the relevant witnesses and documents are located in the Northern District of California.  Box is located in Los Altos, California, in the Northern District of California, and is responsible for the design, development, testing, marketing, offering for sale, and sale of the Accused Products.  All key witnesses with knowledge regarding the design, development, testing, functionality and operation of the Accused Products are located in the Northern District of California, including Sam Ghods, Vice President of Technology.  [Shirk Decl., ¶¶ 5-10.]  In addition, key witnesses regarding market research, product brochures, and advertising reside in Northern California, such as Grant Shirk, the Group Product Marketing Manager for Enterprise products.  [*Id.*]   Key witnesses regarding the sale, distribution and other financial information concerning the Accused Products also reside in the Northern District of California, such as Jennifer Ceran.  [*Id.*]  It would not only be far more convenient for these witnesses if the case were transferred to California, but it would greatly inconvenience them if forced to travel 3,000 miles to this venue.  [*Id.*, ¶ 9.]  Indeed, Box is rapidly growing and has product launch and possible IPO preparations to address within the next year.  Such activities require the work of its key technical and marketing employees at Box headquarters – the same individuals who are the likely witnesses in this case. [*Id.*, ¶ 11.]

Likewise, the key documentary evidence is located in California.  Specifically, Box's documents relating to the design, development, testing, functionality and operation of the

Accused Products are located in Box's Los Altos headquarters.  [*Id.*, ¶ 5.]  In addition, all of Box's documents relating to marketing, distribution, and sales concerning the Accused Products, as well as other financial documents, are located in Box's Los Altos headquarters.  [*Id.*]

By contrast, there are no key witnesses or documents in Virginia, which weighs against maintaining venue here. *See GTE Wireless, Inc.*, 71 F. Supp. at 520 (noting that plaintiff failed to identify any witnesses in the transferor district that would offer relevant testimony, weighing in favor of transfer); *LG Elecs.*, 131 F. Supp. 2d at 814 (the fact that "few, if any, relevant witnesses . . . reside in Virginia" weighed in favor of transfer); *NanoEnTek, Inc.*, 2011 U.S. Dist. LEXIS 138535, at *8-10 (the fact that "no evidence, party witnesses, or non-party witnesses" were located in Virginia weighed in favor of transfer).  Box has only five employees in Virginia, none of whom had any involvement in the design and development of the Accused Products.[6]  [Shirk Decl., ¶ 8.]  Further, Box maintains no documents in Virginia regarding the Accused Products. [*Id*, ¶ 6.]  And while Carahsoft is located in Virginia, Carahsoft had no role in the design, development, testing or manufacture and no thus no relevant Carahsoft witnesses or documents are located in Virginia.  [*Id.*, ¶ 12.]  Finally, Plaintiff is located in Luxembourg and will thus be no more inconvenienced by travel to California than to Virginia.

Moreover, the convenience of non-party witnesses also weighs in favor of transfer.  For example, an inventor on two of the twelve asserted patents-in-suit resides in California.[7] [Overend Decl., ¶ 3.]  By contrast, no third party witnesses – such as inventors or prosecuting attorneys – reside in Virginia.  [*Id.*, ¶ 2, 8.]  As such, the location of non-party witnesses favors transfer.

---

6       Specifically, there are three sales representatives, one marketing representatives, and an HR employee (who spends half his time in California) located in Virginia.  [Shirk Decl., ¶ 8.]

7       Notably, both sets of lead counsel are also located in the Northern District of California.

In sum, because California is the hub of the accused activity and far more convenient for the key witnesses, the interests of the witnesses and access to sources of proof weigh in favor of transferring this action to the Northern District of California.

>    **c.**     **The Convenience Of The Parties Weighs In Favor Of Transfer**

In considering the convenience of the parties, "[c]ourts generally evaluate this factor by considering the parties' residences." *Scott v. Branch Banking & Trust Co.*, 2008 U.S. Dist. LEXIS 109442, at *14 (E.D. Va. Sept. 18, 2008) (citation omitted). In addition, the fact that key "witnesses and relevant documents are located in [the transferee district . . .] obviously makes that forum more convenient than [the transferor district]." *Id.*

Here, because Box is located in Northern California, and all the key witnesses and documents are there as well, it would be more convenient to litigate in the Northern District of California.  Moreover, Plaintiff is located in Luxembourg, and did not participate in the development or prosecution of the patents and thus would have little or no relevant evidence at all, let alone evidence located in Virginia.  Therefore, it would be just as convenient for Plaintiff to litigate in California as in Virginia.  *See LG Elecs.*, 131 F. Supp. 2d at 814 (noting the fact that "few, if any, relevant . . . parties reside in Virginia" weighed in favor of transfer); *Kabat v. Bayer Cropscience LP*, 2008 U.S. Dist. LEXIS 41187, at *11-12 (E.D. Va. May 22, 2008) (plaintiff who resided in Massachusetts but chose to litigate in Virginia would not be inconvenienced by transfer to North Carolina). Finally, Carahsoft is not only subject to jurisdiction in California, but it consents to jurisdiction there and hereby moves for transfer.  Accordingly, this factor weighs strongly in favor of transfer.

        **d.**        **The Interests Of Justice Compel Transfer To The Northern District Of California**

Finally, Section 1404 (a) requires that a court consider the "interest of justice," a consideration of factors unrelated to witness and party convenience. Whether a plaintiff has engaged in forum shopping is one important factor, particularly in cases that "have no real nexus to the district." *See, e.g., Telepharmacy Solutions v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 743-44 (E.D. Va. 2003) ("The 'rocket docket' certainly attracts plaintiffs, but the Court must ensure that this attraction does not dull the ability of the Court to continue to act in an expeditious manner.").  Courts should consider circumstances such as the pendency of a related action, the court's familiarity with the applicable law, docket conditions, the ability to join other parties, and the possibility of harassment. *See Bd. Of Trustees v. Baylor  Heating and Air Conditioning*, 702 F. Supp. 1253, 1260 (E.D. Va. 1988).

Given Plaintiff's forum shopping in this case, this factor favors transfer. None of the real parties in interest – Open Text S.A. and Box -- has any ties to the Eastern District of Virginia. Carahsoft, which is no differently situated (as it relates to this lawsuit) than numerous other Box distributors in other forums, was likely named in this lawsuit simply to attempt to make venue here seem appropriate, when in fact it is not.  The "interests of justice are not served by such blatant forum shopping." *Id.* at 744.

Moreover, given that Box is located in California and that the hub of the allegedly infringing activity is there, the Northern District of California is the forum with the greatest interest in resolving this dispute.

In addition, Plaintiff has filed a similar lawsuit against Alfresco Software Ltd., Alfresco Software, Inc., and Carahsoft in the Eastern District of Virginia, alleging infringement of nine of

the twelve patents at issue in this case.  *See Open Text S.A. v. Alfresco Software, Ltd., et al.*, No. 2:13-cv-320 (E.D. Va. 2013).  Defendants understand that the Alfresco entities and Carahsoft are likewise seeking to transfer that case to the Northern District of California, the hub of the allegedly infringing activity in that case and home to Alfresco Software, Inc.  Judicial economy would thus be served by transferring both cases to the same district in California.

Finally, the Court should reject any argument by Plaintiff that this district's faster docket supports transfer.  Docket conditions "are a minor consideration, which a court must view in light of other relevant factors, and which will receive little weight if all other reasonable and logical factors result in a transfer of venue." *Koh*, 250 F. Supp. 2d at 639.  When a plaintiff with no significant connection to the Eastern District of Virginia chooses to litigate in the district because it is known as the "rocket docket," other courts have found that the interests of justice are not served.  *See Pragmatus*, 769 F. Supp. 2d at 995; *see also Cognitronics Imaging Systems, Inc. v. Recognition*, 83 F. Supp. 2d 689, 699 (E.D. Va. 2000).

**C.     If It Does Not Transfer The Entire Action, The Court Should Sever and Stay the Claims As To Carahsoft and Transfer The Claims As to Box**

This entire action should be transferred to California. But if the Court elects not to transfer the entire case, it should at least transfer the claims against Box to California under Section 1404(a), and then sever and stay the remaining claims against Carahsoft. It is customary in patent infringement cases brought against both manufacturer and a distributor/retailer for courts to grant a motion to transfer the case against the manufacturer, and then order the remaining action against a distributor/retailer to be severed and stayed. *See, e.g.*, *Brown Mfg. Corp. v. Alpha Lawn & Garden Equip., Inc.*, 219 F. Supp. 2d 705, 710 (E.D. Va. 2002) (granting motion to transfer patent infringement claims against manufacturer and marketer based in South

Carolina, and staying claims against the distributor and retailers based in Maryland and Virginia); *LG Elecs.*, 131 F. Supp. 2d at 816-17 (granting motion to transfer patent infringement claims against Taiwanese manufacturer and California wholly-owned subsidiary, and staying claims against the California corporation's wholly-owned subsidiary based in New Jersey); *Corry*, 16 F. Supp. 2d at 666 (granting motion to transfer patent infringement claims against the manufacturing entities whose principal place of business was in Indiana, and staying case against the Virginia distributors).

Severance is appropriate where (1) the claim to be severed is only peripheral in nature, (2) adjudication of the remaining main claims would potentially dispose of the severed claim, and (3) transfer of the remaining claims is otherwise warranted under section 1404(a). *See Koh*, 250 F. Supp. 2d at 631-32. All of these requirements are met here.

First, the claims of patent infringement against Carahsoft are peripheral in nature because it does not manufacture or design the Accused Products. [Shirk Decl., ¶ 13.]  Carahsoft has no role in the design, development, manufacture, research or testing of the Accused Products, but instead only resells the products.  Indeed, Carahsoft has no unique information relevant to the infringement inquiry.  Courts consider claims such as this to be peripheral.  *See, e.g.*, *Koh*, 250 F. Supp. 2d at 632 (patent infringement claim against retailer who only owned and operated store was peripheral); *Brown Mfg. Corp.*, 219 F. Supp. 2d at 709 (infringement claims against distributer and retail sellers of allegedly infringing product were peripheral to claims "at the heart of th[e] case" against the manufacturer).

Second, adjudication of the claims against Box will dispose of the claims against Carahsoft. Box believes that Plaintiff's patents are invalid, and a finding invalidating any or all of the asserted patent claims would necessarily dispose of those claims against Carahsoft.  In

addition, whether Carahsoft is liable for patent infringement is dependent on whether Box, as the manufacturer of the Accused Products, is liable for patent infringement. *See Koh*, 250 F. Supp. 2d at 632-33 (plaintiff's patent infringement claim against the manufacturer could dispose of the claim against the distributor-retailer).

Finally, as discussed earlier, transfer of the main claims against Box is otherwise warranted under section 1404(a). Accordingly, if it does not transfer the entire action, this Court should sever and stay the claims against Carahsoft.

## IV    CONCLUSION

Plaintiff's claims have no legitimate connection to Virginia.  California is clearly the hub of the accused activity and the locus of all key evidence.  This case belongs in the Northern District of California, and thus Defendants request that the Court grant their joint motion to transfer.

Respectfully submitted,

BOX, INC. and
CARAHSOFT TECHNOLOGY CORPORATION

By:  */s/ Mark W. Wasserman*_____
Mark W. Wasserman
Virginia State Bar No. 22638
Counsel for Defendants
Reed Smith LLP
3110 Fairview Park Dr., Suite 1400
Falls Church, VA 22042
Telephone: (703) 641-4200
Facsimile: (703) 641-4340
mwasserman@reedsmith.com

Richard C. Sullivan, Jr.
Virginia State Bar No. 27907
Matthew R. Sheldon
Virginia State Bar No. 41892
Counsel for Defendants

Reed Smith LLP
3110 Fairview Park Dr., Suite 1400
Falls Church, VA 22042
Telephone: (703) 641-4200
Facsimile: (703) 641-4340
rsullivan@reedsmith.com
msheldon@reedsmith.com

Scott D. Baker (*admitted pro hac vice*)
John P. Bovich (*admitted pro hac vice*)
Jesse L. Miller (*admitted pro hac vice*)
William R. Overend (*admitted pro hac vice*)
Jonah D. Mitchell (*admitted pro hac vice*)
Counsel for Defendants
Reed Smith LLP
101 Second St
Suite 1800
San Francisco, CA 94105
Telephone: (415) 543-8700
Facsimile: (415) 391-8269
sbaker@reedsmith.com
jbovich@reedsmith.com
jessemiller@reedsmith.com
woverend@reedsmith.com
jmitchell@reedsmith.com

William R. Poynter
Virginia State Bar No. 48672
Counsel for Defendants
WILLIAMS MULLEN, P.C.
999 Waterside Dr., Suite 1700
Norfolk, VA 23510
Telephone: (757) 473-5334
Facsimile: (757) 473-0395
wpoynter@williamsmullen.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of August, 2013, I electronically filed the foregoing Memorandum of Law in Support of Joint Motion to Transfer Venue or in the Alternative Sever and Stay the Claims against Carahsoft Technology with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> Gregory N. Stillman
> Brent L. VanNorman
> Hunton & Williams
> 500 E Main St
> Suite 1000
> Norfolk, VA 23510
> gstillman@hunton.com
> bvannorman@hunton.com
>
> Christopher C. Campbell
> Cooley LLP
> 11951 Freedom Drive
> Reston, VA 20190-5656
> ccampbell@cooley.com
>
> Brian J. Eutermoser
> Britton F. Davis
> Peter J. Sauer
> Sara J. Radke
> Sarah J. Guske
> Wayne O. Stacy
> Cooley LLP
> 380 Interlocken Crescent
> Suite 900
> Broomfield, CO 80021-8032
> beutermoser@cooley.com
> bdavis@cooley.com
> psauer@cooley.com
> sradke@cooley.com
> wstacy@cooley.com
> sguske@cooley.com
>
> Thomas J. Friel, Jr.
> Cooley LLP
> 101 California St
> 5th Floor
> San Francisco, CA 94111-5800
> tfriel@cooley.com

By:    */s/ Mark W. Wasserman*_____
          Mark W. Wasserman
          Virginia State Bar No. 22638
          Counsel for Defendants
          Reed Smith LLP
          3110 Fairview Park Dr., Suite 1400
          Falls Church, VA 22042
          Telephone: (703) 641-4200
          Facsimile: (703) 641-4340
          mwasserman@reedsmith.com